UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: GOOGLE DIGITAL ADVERTISING                21-md-3010 (PKC)
ANTITRUST LITIGATION

                                                 OPINION AND ORDER

-----------------------------------------------------------x

IN RE: GOOGLE DIGITAL ADVERTISING                21-cv-7001 (PKC)
ANTITRUST LITIGATION

-----------------------------------------------------------x
MICHAEL STELLMAN, individually and on
behalf of all others similarly situated,

                    Plaintiff,                   23-cv-1532 (PKC)

        -against-

GOOGLE LLC and ALPHABET INC.,

                    Defendants.
-----------------------------------------------------------x
CASTEL, Senior District Judge:

            Defendants Google LLC and Alphabet Inc. (collectively, "Google") move to

compel arbitration and stay the claims of plaintiffs Cliffy Care Landscaping LLC ("Cliffy Care")

and Michael Stellman.  (ECF 889.)  Google urges that Cliffy Care and Stellman each entered into

an agreement to arbitrate when they consented to Google's Advertising Terms of Service (the

"Terms") and that the arbitration agreement contained in the Terms governs their claims in these

proceedings.

            Fact discovery is closed.  In support of its motion, Google has submitted records

reflecting that Cliffy Care and Stellman agreed to the Terms after being presented with notice

that the Terms contained a binding arbitration clause and that they had the ability to opt out of

arbitration.  In response, Cliffy Care and Stellman urge that Google has not proved the existence

of an enforceable arbitration agreement, that enforcing the arbitration agreement would be unconscionable under California law, and that California law bars the arbitration of claims that seek injunctive relief for the benefit of the general public.  For the reasons that will be explained, the Court concludes that Google has demonstrated the existence of an enforceable arbitration agreement, that Cliffy Care and Stellman have not demonstrated unconscionability, and that the injunctive relief described in their complaints seeks to redress harms allegedly suffered by plaintiffs as users of Google's advertising products and not relief on behalf of the general public.

Accordingly, Google's motion to compel arbitration will be granted, and the claims of Stellman and Cliffy Care will be stayed.

BACKGROUND

Beginning in or around 2016, Google first implemented its Terms for advertisers that used its advertising products, and it has periodically updated the Terms.  (Mobin Dec. ¶¶ 3-4 (ECF 891).)  Advertisers are not able to use Google's advertising products until they agree to the Terms by clicking an "Accept" button.  (Mobin Dec. ¶ 3.)

In September 2017, Google modified the Terms to incorporate an arbitration agreement (the "September 2017 Terms").[1]  (Mobin Dec. ¶ 4 & Ex. A.)  Google launched a notice campaign that included a direct email to advertisers, a public blog post, and an alert presented to advertisers when they logged into their accounts.  (Mobin Dec. ¶ 4.)  These notices included a link that, when clicked, took advertisers to a webpage containing the September 2017 Terms.  (Mobin Dec. ¶ 6 & Ex. B.)  The following text appeared prominently in bold lettering at the top of that page, with no additional text:

> **Please review these Terms carefully.  They include the use of binding arbitration to resolve disputes rather than jury trials or**

---

[1] Google revised these terms in April 2018 and November 2019 but did not materially modify the arbitration provisions.  (Mobin Dec. ¶¶ 12-13 & Exs. D, E.)

> **class actions.  Please follow the instructions in terms below if you
> wish to opt out of this provision.  Learn more.**

(Mobin Dec. Ex. B; emphasis in original.)  The first paragraph of the September 2017 Terms

included the following language:

> Please read these terms carefully.  They require the use of binding
> individual arbitration to resolve disputes rather than jury trials or
> class actions.  If Customer wishes, Customer may opt out of the
> requirement to arbitrate disputes by following the instructions in
> Section 13(F) below within 30 days of the first acceptance date of
> any version of these Terms containing an arbitration provision.

(Mobin Dec. Ex. A.)  Section 13(A) of the September 2017 Terms included the

following broad arbitration provision:

> Arbitration of disputes. Google, Customer, and Advertiser agree to
> arbitrate all disputes and claims between Google and Customer or
> between Google and Advertiser that arise out of or relate in any way
> to the Programs or these Terms. This agreement to arbitrate
> ("Dispute Resolution Agreement" or "Section 13") is intended to be
> broadly interpreted and includes, for example:
>     (1) claims brought under any legal theory;
>     (2) claims that arose before Customer or Advertiser first accepted
>     any version of these Terms containing an arbitration provision;
>     (3) claims that may arise after the termination of Customer's or
>     Advertiser's Use of the Programs;
>     (4) claims brought by or against Google, Google affiliates that
>     provide the Programs to Customer or Advertiser, Google parent
>     companies, and the respective officers, directors, employees,
>     agents, predecessors, successors, and assigns of these entities;
>     and
>     (5) claims brought by or against Customer or Advertiser, the
>     respective affiliates and parent companies of Customer or
>     Advertiser, and the respective officers, directors, employees,
>     agents, predecessors, successors, and assigns of these entities.

(Mobin Dec. Ex. A.)

Section 13(F) of the September 2017 Terms granted advertisers a 30-day period to

opt out of the arbitration provision, stating that they "must notify Google as set forth below"

through "a webform available at adwords.google.com/nav/arbitration."  (Mobin Dec. Ex. A.)  An

advertiser who clicked on the webform hyperlink would be taken to a page with the heading "Google LLC Advertising Program Terms: Dispute Resolution Settings."  (Mobin Dec. ¶ 10 & Ex. C.)  That page presented two options: "Arbitration: Use binding arbitration to resolve disputes with Google (default upon acceptance of Google LLC Advertising Program Terms)" and "Opt out of arbitration: I don't want to be bound by the Dispute Resolution provisions of the Google LLC Advertising Program Terms."  (Mobin Dec. Ex. C.)

Google's records reflect that plaintiff Stellman accepted the Terms on September 14, 2017, and that Cliffy Care later accepted the Terms on November 20, 2019, when it first signed up for an advertising account with Google.  (Mobin Dec. ¶ 17-18 & Exs. H, I, J, K.)  Google records identify whether an advertiser has opted out of arbitration, and records for Cliffy Care and Stellman reflect that they did not.  (See Mobin Dec. Exs. H, J, L.)

The Court previously denied a motion to compel arbitration that was filed by Google at the pleading stage because it relied on an affidavit that was testimonial in nature and did not annex records reflecting any plaintiff's consent to arbitration.  (See ECF 701 at 25.)  As noted, fact discovery is now closed.  In support of its motion, Google has filed the Declaration of Armete Mobin and the exhibits annexed thereto.  Plaintiffs have submitted no evidence of their own in their filings in opposition to the motion.

LEGAL STANDARD

The principles governing a motion to compel arbitration are set forth under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  The Supreme Court has explained that the purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).  The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  JLM

4

Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)).  The FAA provides that when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3; see also Smith v. Spizzirri, 601 U.S. 472, 476 (2024) ("When § 3 says that a court 'shall . . . stay' the proceeding, the court must do so.").

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  The Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002), and draws all reasonable inferences in favor of the non-moving party.  Nicosia, 834 F.3d at 229.

DISCUSSION.

I.    GOOGLE HAS ESTABLISHED THE EXISTENCE
      OF A VALID ARBITRATION AGREEMENT.

A.  California Law on the Existence of an Agreement to Arbitrate.

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties.  This question is determined by state contract law."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 73-74 (2d Cir. 2017) (internal citation omitted).  Section 14 of the Terms includes a California choice-of-law provision, and the parties agree that California law governs whether they entered into an arbitration agreement. (Def. Mem. 8; Pl. Mem. 3.)

"A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract." Ramirez v. Charter Communications, Inc., 16 Cal. 5th 478, 492 (Cal. 2024) (quotation marks omitted). "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (Cal. 2012).

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 857 (9th Cir. 2022) (applying California law). "Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms. Whether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of arbitration terms; in the context of web-based contracts, as discussed further below, clarity and conspicuousness are a function of the design and content of the relevant interface." Meyer, 868 F.3d at 74-75 (applying California law; internal citations omitted). "Insofar as it turns on the reasonableness of notice, the enforceability of a web-based agreement is clearly a fact-intensive inquiry. Nonetheless, on a motion to compel arbitration, we may determine that an agreement to arbitrate exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." Id. at 76 (internal citation omitted).

B.  <u>Google and Stellman Entered into an Agreement to Arbitrate.</u>

Stellman urges that Google has not met the burden of proving a valid agreement to arbitrate because it has not annexed copies of the alerts that Google's disseminated as part of it notice campaign when it implemented the September 2017 Terms.  (<u>See</u> Mobin Dec. ¶ 4.)  He argues that without copies of these alerts showing a hyperlink to the webpage containing the September 2017 Terms, Google is unable to show that Stellman actually saw the September 2017 Terms and was on notice of its contents.  (Opp. Mem. at 5-6.)  Stellman urges that Google's motion should be denied because "numerous factual issues remain" as to the notice that advertisers received concerning the September 2017 Terms.  (Opp. Mem. at 7.)

But Stellman does not explain why the alerts used in Google's notice campaign are relevant to his acceptance of the Terms.  Stellman does not assert that he was misled by the notice campaign or that it affected his understanding of the Terms.  Google has submitted records reflecting that Stellman accepted the 2017 Terms on September 14, 2017.  (Mobin Dec. Ex. J, K.)  Stellman's "Google Ads Account Home Page" includes the line "Google program advertiser terms" and the entry "Status: Accepted (2017-9-14 19:04:18 America/Los_Angeles)." (Mobin Dec. Ex. J.)  Stellman's "Customer Change History" states "Sep 14 2017 19:04 PDT Customer has ACCEPTED terms and conditions for agreement 294, version 2.0, legal_document_id: 18019."  (Mobin Dec. Ex. K.)  Stellman does not dispute the accuracy of these records or assert that he did not actually accept the September 2017 Terms.  In addition, the webpage containing the September 2017 Terms contained boldfaced, conspicuous notice that they contained an arbitration agreement and that the advertiser could opt out of arbitration. (Mobin Dec. Ex. B.)  Given that Stellman accepted the Terms, the contents the alerts in Google's notice campaign are of little moment to the existence of the agreement.

Stellman also states that "the actual link in the terms leading advertisers to the arbitration opt-out page is not in the record" and that "Google has not presented evidence of the opt-out page that existing advertisers would have viewed in 2017 had they viewed the Terms." (Opp. Mem. at 6-7.) But Google has submitted both a screenshot of the website that an advertiser would have encountered, which featured a scrollable window containing the September 2017 Terms, and the complete text of the September 2017 Terms, which at paragraph 13(F) contains a link to the arbitration opt-out page in the format typically associated with a web link (i.e., "adwords.google.com/nav/arbitration"). (Mobin Dec. Exs. B, A.) Stellman does not assert that he was unable to identify the link to the opt-out page contained in paragraph 13(F), that he was unaware that the Terms contained an arbitration agreement or that the straightforward opt-out page annexed at Exhibit C of the Mobin Declaration was not actually the one in use in September 2017. He merely suggests the possibility. Stellman does not assert that in the discovery phase of this action he was obstructed from obtaining any historical versions of pages used in connection with acceptance of the Terms. Stellman's speculation that the Terms may not have contained an obvious link to the opt-out page or that the opt-out page may have been different than the one submitted by Google does not overcome the probative evidence submitted by Google.

Google has presented uncontroverted evidence that Stellman accepted the September 2017 Terms on September 14, 2017, and that the web page containing those Terms featured conspicuous language expressly informing advertisers that they contained a binding arbitration agreement, as well as the ability for advertisers to opt out of the provision. (Mobin Dec. Exs. A, B, J, K.) Accordingly, the Court concludes that Google has demonstrated the existence of a valid arbitration agreement between Google and Stellman.

C.  Google and Cliffy Care Entered into a Valid Agreement to Arbitrate.

Cliffy Care's Google Ads Account Homepage reflects that it accepted the Terms on November 20, 2019.  (Mobin Dec. Ex. H.)  Its "Customer Change History" has the following entry: "Nov 20, 2019 17:12 PST  Customer has ACCEPTED terms and conditions for agreement 294, version 2.5, legal_document_id 131839."  (Mobin Dec. Ex. I.)  The Mobin Declaration states that Cliffy Care accepted the Terms as updated in November 2019, which are attached to his declaration at Exhibit E.  (Mobin Dec. ¶¶ 13, 17.)

In opposition to Google's motion, Cliffy Care argues that Google has not conclusively demonstrated that the "agreement 294, version 2.5, legal_document_id 131839" referenced in the Change History at Exhibit I is the same November 2019 Terms attached to the Mobin Declaration.  (Opp. Mem. 8-9.)  But Cliffy Care does not dispute that it accepted the Terms, that those Terms contained an arbitration provision, and that the Terms included adequate notice of the binding arbitration provision.  In a deposition, Cliffy Care's representative did not dispute that it was required to accept the Terms when it opened an account on Google Ads, and, in its response to Google's requests to admit, states "that it did not take affirmative action to opt out of the dispute resolution agreement presented in the 2019 terms and conditions."  (Def. Mem. Exs. 1, 4.)  Cliffy Care had the opportunity to take discovery as to what exact document is referenced as "agreement 294, version 2.5" in the Change History maintained for Cliffy Care. Similar to Stellman, Cliffy Care's suggestion that it may have entered into some version of the Terms other than the November 2019 Terms is speculative, unsupported by evidence and does not undermine Google's submissions that unambiguously show Cliffy Care's acceptance of the November 2019 Terms.

The Court concludes that Google has demonstrated the existence of a valid arbitration agreement between Google and Cliffy Care.

II.    PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE TERMS' ARBITRATION PROVISIONS ARE UNCONSCIONABLE.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "Under the FAA, a generally applicable contract defense such as unconscionability may invalidate an arbitration agreement if the defense is enforced evenhandedly and does not interfere with fundamental attributes of arbitration. Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions." Prima Donna Development Corp. v. Wells Fargo Bank, N.A., 42 Cal. App. 5th 22, 37 (Cal. Ct. App. 2019) (internal citations and quotation marks omitted). "Since unconscionability is a contract defense, the party opposing arbitration bears the burden of proving that an arbitration provision is unenforceable on that ground." Chin v. Advanced Fresh Concepts Franchise Corp., 194 Cal. App. 4th 704, 708 (Cal. Ct. App. 2011). Unconscionability is an issue of law for the court. Id.

Under California law, an unconscionability defense "requires both procedural and substantive unconscionability." Basith v. Lithia Motors, Inc., 90 Cal. App. 5th 951, 953 (Cal. Ct. App. 2023). Procedural unconscionability considers whether there was "oppression and surprise" in an agreement's terms, such as "an absence of meaningful choice" due to unequal bargaining power or obscure terms hidden within a prolix agreement. Fisher v. MoneyGram Int'l, Inc., 66 Cal. App. 5th 1084, 1094 (Cal. Ct. App. 2021) (quotation marks omitted). Examples of procedural unconscionability also include the use of unreadably small print or the

presence of an illusory opt-out provision.  Fuentes v. Empire Nissan, Inc., 90 Cal. App. 5th 919, 928 (Cal. Ct. App. 2023); Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1211 (9th Cir. 2016).

An agreement is substantively unconscionable when its terms are "overly harsh" or "one-sided."  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (Cal. 2000).  But "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience."  Pinnacle Museum Tower, 55 Cal. 4th at 246 (quotation marks omitted).

"These two elements need not be present to the same degree.  Rather we evaluate them on a sliding scale. The more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude that the contract is unenforceable. Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required."  Fuentes, 90 Cal. App. 5th at 927-28.

Plaintiffs urge that the Terms are procedurally unconscionable because Google has "fail[ed] to submit competent evidence" that advertisers were given a "meaningful" opportunity to opt out of the arbitration clause.  (Opp. Mem. 10.)  Plaintiffs again assert that Google has not offered evidence of how the Terms' hyperlink to the opt-out web page "would have appeared to existing advertisers or any evidence at all as to the notification page or link to the opt-out for existing advertisers."  (Id.)  Plaintiffs also assert that they were presented the terms on a "take-it-or-leave-it basis" without any bargaining power.  (Id. at 9.)

Plaintiffs' arguments are rebutted by Google's evidentiary submissions.  The record reflects that Stellman and Cliffy Care both affirmatively agreed to the Terms after being presented with a page that included a conspicuous and boldfaced notice that the Terms included a binding arbitration provision, from which advertisers could opt out.  (Mobin Dec. Ex. B, H-K.)

Neither Stellman nor Cliffy Care has submitted a declaration or other evidence attesting to their own confusion over the Terms or their ability to opt out. As to the visibility of the link to the opt-out page contained in the September 2017 Terms, those terms were contained in a scrollable window. (Mobin Dec. Ex. B.) Google has submitted the complete September 2017 Terms as a single printed document. (Mobin Dec. Ex. A.) As noted, paragraph 13(F) of the September 2017 Terms include an apparent and obvious url link to the webform to opt out of arbitration. (Mobin Dec. Ex. A.) That webform includes a simple and easy-to-understand menu that permits the advertiser to choose between agreeing to arbitration and opting out. (Mobin Dec. Ex. C.)

True, California courts have concluded that the ability to opt out of arbitration does not alone insulate an arbitration agreement from procedural unconscionability. See, e.g., Johnson v. Stoneridge Creek Pleasanton CCRC LLC, 2023 WL 7125117, at *2 (Cal. Ct. App. Oct. 30, 2023) (unpublished opinion). But plaintiffs point to no indicia of coercion or pressure from Google. For instance, in Johnson, the court concluded that residents of a senior-living facility "may have felt pressure" not to opt out of an arbitration agreement with a care provider that was responsible for their basic living needs. See id. Plaintiffs also do not contend that Google presented advertisers with a "distorted" or misleading account of the relative merits of arbitration. See Gentry v. Superior Ct., 42 Cal. 4th 443, 471 (Cal. 2007). Again, neither Stellman nor Cliffy Care claims to have been actually confused by the Terms, blindsided by the inclusion of the arbitration clause, or state that they were pressured or coerced into accepting the arbitration provision.

Plaintiffs also urge that the Terms are substantively unconscionable because they contain a unilateral modification clause, a class-action waiver and a pre-arbitration procedure requiring a complainant to submit an informal pre-arbitration request for dispute resolution.

(Opp. Mem. 10-11.)  But Paragraph 13(G) of the Terms provides that an advertiser may reject any amendments made by Google within 30 days, and paragraph 13(B) requires all parties to submit a pre-arbitration notice.  (Mobin Dec. Exs. A, D, E.)  By contrast, in <u>Carlson v. Home Team Pest Defense, Inc.</u>, 239 Cal. App. 4th 619, 635 (Cal Ct. App. 2015), a decision cited by plaintiffs, the court found an arbitration agreement substantively unconscionable because only employees were required to arbitrate claims and provide a pre-arbitration demand without legal representation, whereas the employer could unilaterally opt to proceed in court and had no pre-arbitration demand obligation.  The provisions cited by plaintiffs in this case as substantively unconscionable do not create such one-sided duties.

Accordingly, plaintiffs have not demonstrated that the Terms are procedurally or substantively unconscionable.

III.    NEITHER STELLMAN NOR CLIFFY CARE
        SEEKS PUBLIC INJUNCTIVE RELIEF.

A.  <u>California Law on the Arbitrability of Public Injunctive Relief.</u>

Plaintiffs urge that compelling them to arbitrate their claims seeking injunctive relief pursuant to California statute would be contrary to the California Unfair Competition Law (the "UCL") and the holding of <u>McGill v. Citibank, N.A.</u>, 2 Cal. 5th 945 (Cal. 2017).

Under California law, certain statutory claims seeking "public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" may not be compelled to arbitration.  <u>McGill</u>, 2 Cal. 5th at 951-52.  <u>McGill</u> distinguishes private injunctive relief that "primarily resolves a private dispute between the parties and rectifies individual wrongs" from injunctive relief "that by and large benefits the general public" and benefits the plaintiff only "incidentally" or as "a member of the general public."  <u>Id.</u> at 955 (quotation marks, citations and brackets omitted).  "[T]he

primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." Id. at 954 (quotation marks omitted). "Agreements to arbitrate claims for public injunctive relief under . . . the UCL . . . are not enforceable in California." Id. at 956. McGill also scrutinized the specific injunctive relief sought, which was directed to enjoining defendant's allegedly false advertising and marketing. Id. at 956-57.

Citing to California authority, the Ninth Circuit distilled McGill's holding as follows:

> It follows that public injunctive relief within the meaning of McGill is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party. The paradigmatic example would be the sort of injunctive relief sought in McGill itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan. Such an injunction attempts to stop future violations of law that are aimed at the general public, and imposing or administering such an injunction does not require effectively fashioning individualized relief for non-parties.
>
> By contrast, when the injunctive relief being sought is for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties, it has been held to be private injunctive relief.

Hodges v. Comcast Cable Commc'ns, LLC, 21 F.4th 535, 542-43 (9th Cir. 2021) (internal citations omitted). Prospective injunctive relief is not directed to the general public when "the primary beneficiaries [are] a defined group of similarly situated persons," such as employees affected by their employer's wage-and-hour misclassification or student-loan borrowers who challenged the adequacy of disclosures in their loan agreements. See id. at 543 (citing Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1060-61 (9th Cir. 2013) (en banc); Clifford v. Quest Software Inc., 38 Cal. App. 5th 745, 748 (Cal Ct. App. 2019)); see also Blair v. Rent-A-Center,

Inc., 928 F.3d 819, 831 & n.3 (9th Cir. 2019) (claim seeking injunctive relief directed to installment payments for rent-to-own items and final cash purchase price sought "relief oriented to and for the benefit of the general public.").

      In California Crane School, Inc. v. Google LLC, 722 F. Supp. 3d 1026 (N.D. Cal. 2024), the court granted Google's motion to compel arbitration except as to plaintiff's claim seeking public injunctive relief under the UCL.  The plaintiff in California Crane asserted that Apple and Google unlawfully agreed to divide the markets for online search and search advertising.  Id. at 1031-32.  Plaintiff had accepted the 2017 and 2018 Terms required of Google's advertisers.  Id. at 1032.  Among other things, plaintiff asserted that Google and Apple and entered into a profit-sharing non-compete agreement, and included a claim for injunctive relief under the UCL to enjoin them from entering future non-compete agreements.  Id. at 1032-33.  Plaintiff alleged that it sought public injunctive relief, asserting that Google and Apple had harmed the general public by reducing the quality of general search services as they related to privacy, data protection, the use of consumer data, choice in general search services, and innovation.  Id. at 1036.  The court agreed, concluding:

> [T]he relief here would provide diffuse benefits to the public by potentially bolstering competition in the search and search advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine users and digital advertisers like [plaintiff].  Greater competition could also accelerate innovation, bringing positive downstream effects on internet users as a whole.

Id. at 1036-37.

B.  The Order of Judge Freeman in the Northern
    District of California Is Not Law of the Case.

Cliffy Care and Stellman urge that their UCL claims cannot be compelled to

arbitration based on an Order issued by District Judge Beth Labson Freeman addressing a UCL

claim brought by two other plaintiffs in these MDL proceedings, Surefreight Global LLC

("Surefreight") and Vitor Lindo.  See In re Google Digital Advert. Antitrust Litig., 2021 WL

2021990, at *6-7 (N.D. Cal. May 13, 2021).  Cliffy Care and Stellman argue that Judge

Freeman's Order is law of the case and that their UCL claims cannot be compelled to arbitration.

But Judge Freeman was not adjudicating the claims of Cliffy Care or Stellman,

and her Order's analysis qualified the ruling in light of its early posture and uncertainty over the

UCL claim's relation to the Sherman Act.  For the purposes of this motion, Judge Freeman's

Order is not the law of the case.

"[W]hen a court has ruled on an issue, that decision should generally be adhered

to by that court in subsequent stages in the same case."  Novick v. AXA Network, LLC, 714 Fed.

App'x 22, 24-25 (2d Cir. 2017) (summary order) (quotation marks omitted).  "Courts apply the

law of the case doctrine when their prior decisions in an ongoing case either expressly resolved

an issue or necessarily resolved it by implication.  Application of the law of the case doctrine is

discretionary and does not limit a court's power to reconsider its own decisions prior to final

judgment."  Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001) (internal

citation and quotation marks omitted).  In an MDL proceeding, where multiple cases are

consolidated for pretrial supervision, each action "is formally a separate case" and the law of the

case doctrine "does not apply in [a] separate action."  In re Interest Rate Swaps Antitrust Litig.,

351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018) (Engelmayer, J.).

16

Cliffy Care originally brought its action in the District Court for the District of Columbia, where the case was assigned to then-District Judge Ketanji Brown Jackson.  See 21 Civ. 6910 (ECF 1).  Stellman filed his complaint in the Northern District of California on September 15, 2022, and the case was randomly assigned to Judge Freeman.  See 23 Civ. 1532, ECF 1, 17.

Before being randomly assigned to Stellman's action, Judge Freeman concluded at the pleading stage that a claim for UCL relief asserted by plaintiffs Surefreight and Lindo sought relief on behalf of the general public and not just the individual plaintiffs and proposed class members.  2021 WL 2021990, at *6-7.  She stated that Surefreight and Lindo, sought "injunctive relief 'to benefit the public from the lower prices and greater innovation that will prevail in competitive digital advertising markets in the absence of Google's monopoly.'  FAC ¶ 251.  They also 'request[ed] "equitable relief as appropriate to halt Google's monopoly conduct and restore competition in the relevant market."'"  Id. at *6.  Judge Freeman concluded the proposed relief "is focused on 'prohibiting unlawful acts that threaten future injury to the general public.'"  Id. (quoting McGill, 2 Cal. 5th at 951).  However, she proceeded to note a "concern" that Surefreight and Lindo could "not seek public injunctive relief premised on the Sherman Act."  Id. at *7.  She noted that the court was "not prepared" to compel Surefreight and Lindo to arbitration "at this juncture" in light of anticipated amendments to the pleading, and because the Court "had not yet had an opportunity to fully analyze" the UCL claim in relation to any Sherman Act claims.  Id.

Neither Cliffy Care nor Stellman were parties to the action brought by Surefreight and Lindo.  They brought separate actions and their claims were not before Judge Freeman when she ruled on the claims of Surefreight and Lindo.  Moreover, Judge Freeman qualified her

analysis given the early stage of the proceeding, the then-pending amendment and the lack of clarity as to whether the relief sought under the UCL might improperly encompass public injunctive relief under the Sherman Act.  2021 WL 2021990, at *7.

Judge Freeman's Order did not resolve the claims brought by Cliffy Care or Stellman, who were not parties to the Surefreight and Lindo proceedings.  For the purposes of this motion, it is not law of the case.

### C.   The Stellman Complaint Does Not Seek Public Injunctive Relief.

Count One of Stellman's complaint brings a claim under the UCL.  (Stellman Compl't ¶¶ 101-17 (23 Civ. 1532, ECF 1).)  It asserts that Google's ad-tech practices, and specifically Reserve Price Optimization and claimed misrepresentations about the use of a second-price auction, caused "Plaintiff and Class members to lose money," and that Stellman and putative class members lack an adequate remedy at law.[2]  (Stellman Compl't ¶¶ 104-05, 110, 112.)  Stellman's UCL claim seeks an injunction requiring greater disclosure from Google about the "true operating nature" of AdX.  (Stellman Compl't ¶ 116.)

Count One emphasizes the harm caused to Stellman and putative class members based on Google's implementation of Reserve Price Optimization and alleged misrepresentations about a second-price auction.  (Stellman Compl't ¶¶ 104-08, 110-13, 115.)  It asserts that injunctive relief will remedy injuries purportedly suffered by Stellman and putative class members.  (Stellman Compl't ¶ 116.)  Stellman also alludes to "the public interest" and public benefit that would come with lower prices and greater innovation in the digital advertising market (Stellman Compl't ¶¶ 114, 117) but does not articulate how the public at large would

---

[2] Stellman's complaint proposes a class consisting of "[a]ll persons and entities in the United States that, from January 1, 2015 to September 5, 2019 (the 'class period'), used Google's display advertising services to place an ad on a website operated by another entity (advertisers)."  (Stellman Compl't ¶ 91.)

benefit from injunctive relief directed to Reserve Price Optimization or transparency about the use of second-price auctions. Rather, his UCL claim is specifically directed to the economic losses of advertisers caused by particular auction practices, and would benefit that category of advertiser plaintiffs specifically, as opposed to an incidental benefit that digital advertisers would gain as members of the general public. See McGill, 2 Cal. 5th at 951-52.

Accordingly, the Court concludes that Stellman's UCL claim is not barred from arbitration under the UCL and the holding of McGill.

D. Cliffy Care Does Not Seek Public Injunctive Relief.

Cliffy Care urges that its claims brought under the Cartwright Act, California Business and Professions Code § 16720, et seq., and the UCL cannot be compelled to arbitration because they seek injunctive relief directed to the general public. Those claims are set forth in the Consolidated Advertiser Class Action Complaint (the "Advertiser Complaint") in which Cliffy Care is a plaintiff. (ECF 399.)

Cliffy Care's Cartwright Act claim asserts that Google entered into unlawful continuing combinations with publishers to restrain trade in the ad-tech market. (Adv. Compl't ¶¶ 391-94.) The Cartwright Act claim seeks treble damages but does not specify any form of injunctive relief, though the complaint's prayer for relief seeks an injunction to restore competition in the relevant markets. (Adv. Compl't ¶¶ 394, 406(C).) Neither the Advertiser Complaint nor Cliffy Care's memorandum identifies what public injunctive relief Cliffy Care seeks pursuant to the Cartwright Act. Because Cliffy Care has not explained how injunctive relief under the Cartwright Act would benefit the general public, as opposed to advertisers that use Google products, its Cartwright Act claim is not exempt from the arbitration agreement pursuant to McGill.

The UCL claim asserts that Google's conduct in the ad-tech industry has harmed Cliffy Care, other plaintiffs and advertisers as a whole, but does not explain how any injunctive relief would benefit the general public.  It describes injury to Cliffy Care and other advertisers. (Adv. Compl't ¶ 398 (Google has engaged in "unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising, causing direct and substantial harm to Plaintiffs and class members in the form of increased advertising costs and reduced efficacy of ad spending.") ¶ 400 (Google has "caused substantial harm, including from Google's inflated prices that advertisers paid . . . .") ¶ 401 ("[p]laintiffs and class members reasonably expected Google's auctions to be fair and reasonable" and "Google violated the UCL by falsely representing to advertisers that it was conducting fair and transparent ad auctions."); ¶¶ 402-04 (Google secretly implemented practices that "caused direct and substantial harm to advertisers who were forced to pay higher ad rates" due to the elimination of competition, and "[p]laintiffs and class members lack an adequate remedy at law to redress certain conduct of Google that violates the unfair prong of the UCL.").)

The allegations that describe a public benefit are cursory and superficial: "The primary purpose and effect of such injunctive relief will be to benefit the public from the lower prices and greater innovation that will prevail in competitive digital advertising markets in the absence of Google's monopoly."  (Adv. Compl't ¶ 405.)  Elsewhere, the Advertiser Complaint asserts that any decrease in advertising costs would be passed on to consumers, and that reduced advertising effectiveness harms consumers by depriving them of information about the range of market competitors.  (Adv. Compl't ¶ 319.)

The Advertiser Complaint does not describe injunctive relief that benefits the public generally while benefiting the plaintiffs only incidentally, as required by McGill and its

progeny.  The UCL claim is, appropriately, focused on the harms suffered by advertisers as a result of Google's alleged auction manipulations.  Now that discovery is closed, Cliffy Care does not point to facts in the record that could show how members of the general public have been affected by Google's auction practices or how injunctive relief on the UCL claim would benefit the general public, as distinguished from the advertisers directly affected by the claimed auction manipulations.

Cliffy Care points to <u>California Crane</u>, which, as noted, concluded that the plaintiff's UCL claim sought general public injunctive relief related to search advertising because the relief covered user privacy, data projection, the use of consumer data, choice in search services and product innovation.  722 F. Supp. 3d at 1036-37.  <u>California Crane</u> also stated that the relief sought was not "class-specific" and the UCL claim was not brought as a class action or representative action.  <u>Id.</u> at 1036.  Cliffy Care does not point to such consumer-oriented relief here, and its claim for injunctive relief under the UCL is premised on redressing harm to plaintiffs and other advertisers in a potential class.  (<u>See</u> Adv. Compl't ¶¶ 398, 400-04.)  In contrast to <u>California Crane</u>, plaintiffs are not describing injunctive relief that benefits the general public and only incidentally affects plaintiffs, but relief from harms specifically targeted to users of Google's ad-buying tools and ad exchanges.  Under <u>McGill</u>, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief."  2 Cal. 5th at 955.  This is the type of injunctive relief described in the Advertiser Complaint.

Accordingly, the Court concludes that neither Cliffy Care's claim under the Cartwright Act nor its claim under the UCL seeks public injunctive relief. The Court concludes that these claims are not barred from arbitration by the holding of <u>McGill</u>.

CONCLUSION.

Google's motion to compel plaintiffs Cliffy Care and Michael Stellman to arbitration is GRANTED. The Clerk is respectfully directed to stay the member case <u>Stellman v. Google LLC</u>, <u>et. al.</u>, 23 Civ. 1532 (PKC), and to update the docket in 21-md-3010 to reflect that the claims of individual plaintiffs Michael Stellman and Cliffy Care Landscaping LLC are stayed. The Clerk is respectfully directed to terminate the motion. (21-md-3010, ECF 889.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 24, 2025