


May 2, 2025

**VIA ECF**
The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> *In re: Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (PKC)
> This Letter Relates to *In re: Google Digital Advertising Antitrust Litig.*, 21-cv-7001 (PKC)
> Advertiser Plaintiffs' Pre-Motion Letter Seeking Leave to File Motion for Partial Summary Judgment

Dear Judge Castel:

We write on behalf of the Advertiser Class Plaintiffs ("Advertisers"), pursuant to the Court's March 15, 2025, Order Extending Certain Deadlines (ECF 926), and Rule 3.A. of the Court's Individual Practices, to respectfully submit this Pre-Motion Letter in anticipation of filing a Motion for Partial Summary Judgment against Defendant Google LLC. No conference is currently scheduled.

This case challenges Google's anticompetitive actions designed to establish and preserve its monopoly across the "ad tech stack"—the collection of display advertising technologies that link advertisers with publishers through real-time bidding processes. In a parallel lawsuit brought by the Department of Justice (*United States v. Google LLC*, 1:23-cv-108 (E.D.Va)—the "DOJ Action") the presiding court recently found (based on common evidence) that Google's behavior within the ad tech stack constituted anticompetitive conduct and unlawful monopolization. *United States v. Google LLC*, 2025 WL 1132012 (E.D.Va. Apr. 17, 2025) ("EDVA Ruling"). Advertisers have focused their claims (and corresponding damages) on two specific aspects of that conduct: Google's Project Bernanke and its Unified Pricing Rules ("UPR").

In order to streamline the issues presented at trial, Advertisers intend to seek partial summary judgment on various issues already conclusively determined in the DOJ Action, based on the doctrine of non-mutual offensive issue preclusion. These issues broadly include (but are not limited to): (1) the market for "ad exchanges for open-web display advertising" is a relevant product market, in which Google has monopoly power; (2) Google's imposition of UPR was anticompetitive conduct that violated the Sherman Act; and (3) UPR increased the number of impressions AdX won and the revenue it received, while decreasing impressions won and revenue received by third-party exchanges. The court in the DOJ Action made a final determination on each of these issues after a full trial on the merits, and

Advertisers seek consistency by precluding Google from attempting to relitigate these issues. Courts in this District have applied non-mutual offensive issue preclusion under similar circumstances.

Advertisers believe that the best use of the Court's and parties' resources is to resolve whether issue preclusion applies and, if so, the scope of that preclusion, prior to submission of motions for summary judgment on other issues. The parties may, for example, seek summary judgment on whether UPR is anticompetitive or on the definitions of the relevant product markets. Briefing on those issues would become unnecessary if the EDVA Ruling is found to have a preclusive effect. Advertisers therefore propose that motions for summary judgment based solely on the application of issue preclusion occur during June and July, with summary judgment motions as to any matters not resolved by the Court's order regarding issue preclusion to follow. Because issue preclusion presents a narrow matter of law, briefing regarding the application of issue preclusion from the EDVA Ruling should be able to proceed on a timeline of 21 days for opposition briefs and 14 days for reply briefs. Depending on the time needed for the Court to issue an order resolving the issue preclusion motions, any remaining summary judgment motions could likely be filed in August or September.

**Non-Mutual Offensive Issue Preclusion Applies to this Action**

Non-mutual offensive issue preclusion (also referred to as non-mutual collateral estoppel), is a form of issue preclusion which "preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019) (citations omitted). In order to invoke this doctrine, a plaintiff must satisfy four conditions: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *Id*.

Each of these conditions is met here. The issues Advertisers seek to preclude Google from re-litigating here are identical to those decided in the DOJ Action, where they were actually litigated and decided by the court, as necessary to support a final judgment on the merits.

1. *The market for "ad exchanges for open-web display advertising" is a relevant product market, in which Google has monopoly power.*

The DOJ Action addressed this specific issue. In the EDVA Ruling, the court stated, "[t]he Court also finds that ad exchanges for open-web display advertising constitute a distinct relevant product market." EDVA Ruling, 2025 WL 1132012, at *21. The court reasoned that "[a]d exchanges play a distinct role in the open-web display ad tech stack," and that "there is no other ad tech tool that is reasonably interchangeable with ad exchanges." *Id*. The court then held, that "Plaintiffs have proven that Google possesses monopoly power in the ad exchange for open-web display advertising market." *Id*. at *31.

This issue is identical to one of the issues Advertisers seek to establish in this case—that there is a relevant market for ad exchanges in open-web display advertising, and that Google has monopoly power in that market. This issue was litigated in the DOJ Action, because it is necessary to establish a relevant market to reach a final judgment regarding violations of the Sherman Act. Thus, issue

preclusion can be applied to this issue, and Advertisers intend to seek such application on summary judgment.

2. *Google's imposition of UPR constituted anticompetitive conduct that violated the Sherman Act.*

Advertisers also seek to establish that Google's imposition of UPR was anticompetitive and thus violated the Sherman Act. The court in the DOJ Action held that "Unified Pricing Rules is another example of Google exploiting its monopoly power and tying arrangement to restrict its customers' ability to deal with rivals, thereby reducing its rivals' scale, limiting their ability to compete and further compounding the harm to customers." EDVA Ruling, 2025 WL 1132012 at *42. It conclusively and unambiguously held that "Unified Pricing Rules constituted anticompetitive conduct." *Id*. The court reasoned that, although "[s]ome of Google's largest publisher customers were disgruntled with the implementation of Unified Pricing Rules," they "continued using DFP as their sole publisher ad server, believing that they had 'very little' ability to switch." *Id*. at *17.

The fact that UPR constituted anticompetitive conduct that violates the Sherman Act is one of the issues Advertisers seek to establish in this case. Since this identical issue (which is necessary for a final judgment) has already been actually litigated and conclusively decided in the DOJ Action, Advertisers will seek to preclude Google from attempting to relitigate it.

3. *UPR increased the number of impressions AdX won and the revenue it received, while decreasing impressions won and revenue received by third-party exchanges.*

This precise issue, too, was specifically decided by the court in the DOJ Action. The court explicitly held: "Unified Pricing Rules increased the number of impressions AdX won and the revenue it received, while decreasing impressions won and revenue received by third-party exchanges." EDVA Ruling at *17. It added that "[t]he overall result of Unified Pricing Rules was that Google's ad tech products continued to gain scale in the display advertising space while rival ad tech products lost scale." *Id*.

This issue was litigated in the DOJ Action and was necessary to support that court's final judgment that UPR constituted anti-competitive conduct. Advertisers should thus be entitled to preclude Google from attempting to relitigate this issue and will seek to do so on summary judgment.

The aforementioned issues were all necessarily determined in the EDVA Ruling, which was set forth that court's final findings of fact and conclusions of law on the merits of the DOJ Action after trial. *Id.* at *2. Although Google may argue that it intends to appeal the EDVA Ruling, courts within the Second Circuit regularly hold that pending appeals do not alter the finality or preclusive effect of a judgment. *See, e.g., Studer v. SEC*, 148 F. App'x 58, 59 (2d Cir. 2005) ("[P]ending appeals do not alter the finality or preclusive effect of a judgment."); *Straus v. Am. Publishers' Ass'n*, 201 F. 306, 310 (2d Cir. 1912) (holding the pendency of an appeal "does not suspend the operation of the judgment as an estoppel"); *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (holding that, under New York law, "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding") (citation omitted); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 WL 174305, at *2 n.2 (S.D.N.Y. Jan. 13, 2020) ("The fact that the case is now on appeal to the Federal Circuit does not alter the collateral estoppel analysis.");

3

*Sherman v. Jacobson*, 247 F. Supp. 261, 268 (S.D.N.Y. 1965) ("A judgment may be final, despite the fact that an appeal from it has not been decided.").

While the burden to show the other three conditions required to assert issue preclusion rests with the party seeking to apply issue preclusion, "the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013), quoting *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir.1996).

Google will not be able to argue that it lacked a full opportunity to litigate the issues set forth above. Each of these issues were integral to the DOJ Action. And, as discussed below, Google cannot meet the standard for unfairness in applying issue preclusion.

**Issue Preclusion Against Google Would Not Be Unfair**

In addition to the four conditions set forth above, "in order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must ensure that application of the doctrine is not unfair." *Bifolck*, 936 F.3d at 79–80 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).

Generally, unfairness becomes a factor when dealing with "a party that had little incentive to defend in the first action,"[1] when "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result,"[2] or when "the party against whom estoppel is sought had little warning during the first suit that the issues being decided might become binding against it in later litigation."[3] None of these circumstances apply here: Google vigorously defended against these same issues in the DOJ Action, it has no procedural opportunities available in this action that were not available in the DOJ Action, and it knew (due to the parallel and partially coordinated nature of the actions) that it was litigating these same issues here.

Although Google may raise the distinction that the DOJ Action was a bench trial, whereas the current action is a jury trial, that distinction does not equate to unfairness or violate the Seventh Amendment. "[A]n equitable determination can have collateral-estoppel effect in a subsequent legal action and [] this estoppel does not violate the Seventh Amendment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 335 (1979) (holding that the law of collateral estoppel foreclosed petitioners from relitigating factual issues determined against them in an SEC action and "nothing in the Seventh Amendment dictates a different result.").

Here, the question is even simpler, because it was Google itself who intentionally mooted the plaintiffs' damages claims in the DOJ Action in order to ensure it received a bench trial in that action.

---

[1] *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 398 (S.D.N.Y. 2008), order clarified on reconsideration, No. 04CV7844BSJDFE, 2008 WL 11516437 (S.D.N.Y. Oct. 1, 2008) (internal quotations and citations omitted).
[2] *Id*.
[3] *Washington State Inv. Bd. v. Odebrecht S.A.*, 2024 WL 3616422, at *6 (S.D.N.Y. July 10, 2024) (internal quotations omitted).

*See* Google's Motion to Dismiss the United States' Damages Claim as Moot and to Strike the Jury Demand (*United States v. Google LLC*, 1:23-cv-108 (E.D.Va), ECF 630) (moving to strike the United States' jury demand and to dismiss the count seeking damages as moot because it "voluntarily tendered to the United States payment for the full amount of monetary relief it could receive in this case."). Google cannot argue that a jury trial *was not available* in the DOJ Action when Google itself intentionally mooted the United States' damages claim to avoid a jury trial.[4]

**Other Courts Have Permitted Issue Preclusion Under Similar Circumstances**

Finally, this court would not be the first in this District to use rulings made in a DOJ action to preclude the relitigation of the same issues in a parallel antitrust action. Under similar circumstances, Judge Jones found that collateral estoppel applied to the findings made after a bench trial in an action brought by the DOJ against Visa and Mastercard. *Discover Fin. Servs. v. Visa USA Inc.*, 598 F. Supp. 2d 394, 400-01 (S.D.N.Y. 2008), *order clarified on reconsideration*, No. 04CV7844BSJDFE, 2008 WL 11516437 (S.D.N.Y. Oct. 1, 2008). In particular, based on the findings in the DOJ action, the court gave "collateral estoppel effect" to numerous key issues, including the definitions of the relevant markets, the existence of market power, and a finding that the alleged conduct was an unlawful restraint that harmed competition. *Id*. Judge Jones concluded that applying collateral estoppel to these issues "would serve judicial economy while remaining fair to Defendants." *Id*. The same is true here, and a trial in this matter will largely focus on establishing classwide impact and the amount of aggregate damages.

In short, Advertisers intend to seek partial summary judgment on the issues outlined above, which are identical to the issues that were actually litigated and conclusively decided in the DOJ Action. Advertisers believe that resolution of that motion should precede other summary judgment proceedings.

We appreciate the Court's time and consideration of this issue.

Respectfully submitted,

*/s/ Dena C. Sharp*
Dena C. Sharp (pro hac vice)
Scott Grzenczyk (pro hac vice)
Mikaela Bock (pro hac vice)
Isabel Velez (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
scottg@girardsharp.com

---

[4] As an attachment to its Motion to Strike, Google included the letter they sent to the United States remitting the payment. (ECF 630-22). The letter is dated the same day that Google filed its Motion to Strike and indicates, "Google makes this payment solely to moot the United States' damages claim in order to streamline this litigation for efficient resolution of the remaining equitable claims." *Id*.

5

mbock@girardsharp.com
ivelez@girardsharp.com

Tina Wolfson (TW-1016)
Theodore W. Maya (pro hac vice)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, California 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs and the Proposed Advertiser Class*