UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Google Digital Advertising Antitrust Litigation | Civil Action No. 21-MD-3010 (PKC) |
|---|---|

*This Document Relates to:*

| In re Google Digital Advertising Antitrust Litigation | Civil Action No. 21-CV-7001 (PKC) |
|---|---|

**ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT**

**REDACTED**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. THE COURT SHOULD GRANT ADVERTISERS' MOTION TO AMEND UNDER RULE 15 ................................................................................................................ 2

    A. Advertisers Have Not Unduly Delayed nor Would Amendment Be Futile ............ 2

    B. Advertiser's Proposed Amendment Would Not Prejudice Google ........................ 3

III. THE COURT SHOULD GRANT ADVERTISERS' MOTIONS FOR COLLATERAL ESTOPPEL AND PARTIAL SUMMARY JUDGMENT ...................... 8

    A. The Proposed Amendment Would Directly Address Issues in Dispute ................ 8

    B. Regardless of Whether the Court Grant the Proposed Amendment, the Court Should Grant Advertisers' Summary Judgment Motion .............................. 9

IV. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**Cases**

*A.V.E.L.A., Inc. v. Est. of Monroe*
  34 F. Supp. 3d 311 (S.D.N.Y. 2014) .................................................................................. 7

*Block v. First Blood Assocs.*
  988 F.2d 344 (2d Cir. 1993) ............................................................................................... 4

*Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*
  2018 WL 1274238 (S.D.N.Y. Mar. 9, 2018) ..................................................................... 2

Bridgeport Music, Inc. v. Universal Music Grp., Inc.
  248 F.R.D. 408 (S.D.N.Y. 2008) ....................................................................................... 6

*City of New York v. Grp. Health Inc.*
  649 F.3d 151 (2d Cir. 2011) ............................................................................................... 6

*De La Rosa Martinez v. Harbor Express*
  2020 WL 7249499 (S.D.N.Y. Oc. 19, 2020) ..................................................................... 3

*Duling v. Gristede's Operating Corp.*
  265 F.R.D. 91 (S.D.N.Y. 2010) ......................................................................................... 6

*Flood v. Just Energy Mktg. Corp.*
  904 F.3d 219 (2d Cir. 2018) ............................................................................................... 3

*Heerwagen v. Clear Channel Commc'ns*
  435 F.3d 219 (2d Cir. 2006) ............................................................................................... 2

*McCagg v. Marquis Jet Partners*
  2007 WL 2454192 (S.D.N.Y. Mar. 29, 2007) ................................................................... 7

*McCarthy v. Dun & Bradstreet Corp.*
  372 F. Supp. 2d 694 (D. Conn. 2005)
  *aff'd*, 482 F.3d 184 (2d Cir. 2007) ..................................................................................... 6

*Michalek v. Amplify Sports & Entertainment LLC*
  2012 WL 2357414 (S.D.N.Y. June 20, 2012) ................................................................... 7

*Monahan v. New York City Dep't of Corr.*
  214 F.3d 275 (2d Cir. 2000) ............................................................................................... 2

*Parklane Hosiery Co. v. Shore*
  439 U.S. 322 (1979) ........................................................................................................... 3

*Pasternack v. Shrader*
  863 F.3d 162 (2d Cir. 2017) ............................................................................................... 2

*Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*
  2001 WL 1286989 (S.D.N.Y. Oct. 24, 2001) .................................................................... 6

*Schnepf v. Jerome H. Siegel, M.D., P.C.*
  1998 WL 474132 (S.D.N.Y. July 11, 1998) ...................................................................... 7

*Scott v. Chipotle Mexican Grill, Inc.*
   300 F.R.D. 193 (S.D.N.Y. 2014) ............................................................................... 5, 6

*Sullivan ex rel. Pointer, Cleaners & Caulkers Welfare Pension & Annuity Funds v. W. New York Residential, Inc.*
   2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003) ............................................................. 6

*TQ Delta, LLC v. CommScope Holding Co., Inc.*
   657 F. Supp. 3d 892 (E.D. Tex. 2023) ........................................................................ 7

*United States For & on Behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*
   889 F.2d 1248 (2d Cir. 1989) ...................................................................................... 5

*United States v. Google LLC*
   778 F. Supp. 3d 797 (E.D. Va. 2025) ................................................................. passim

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................ passim

I.      **INTRODUCTION**

The purpose of collateral estoppel is to streamline the issues in dispute and, as a result, reduce unnecessary litigation. Consistent with these goals, the Court provided plaintiffs an opportunity to seek leave to amend their complaints to further conform them with Judge Brinkema's findings with respect to the relevant geographic markets in particular. While Advertisers do not believe that differences in the geographic market would preclude a finding of collateral estoppel as to any issue, in the event the Court finds otherwise, the proposed amendment moots any viable arguments Google may have based on differences in the geographic market between this action and Judge Brinekma's order (*United States v. Google LLC*, 778 F. Supp. 3d 797(E.D. Va. 2025) ("*EDVA Ruling*")).

Google does not directly dispute any of the key issues, instead arguing that the amendment was untimely and will prejudice Google. But—aside from mooting its arguments—Google does not identify any concrete prejudice that would result from the amendment. This is particularly true because the end result of the amendment would be a collateral estoppel finding that, consistent with the purpose of collateral estoppel, would eliminate—not create—the need for further discovery. And any differences about the extent to which granting collateral estoppel based on a worldwide geographic market (to the extent the Court believes that is necessary) might streamline future proceedings is no reason to deny collateral estoppel in the first instance. Google's remaining arguments have nothing to do with Advertisers' proposed amendment, and instead reiterate points made in its summary judgment opposition.

Advertisers therefore respectfully request that the Court grant their motion for leave to amend their complaint.

## II.   THE COURT SHOULD GRANT ADVERTISERS' MOTION TO AMEND UNDER RULE 15

Rule 15 provides that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15. "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted).

### A.   Advertisers Have Not Unduly Delayed nor Would Amendment Be Futile

Advertisers' proposed amendment is timely. Citing to the Federal Rules of Civil Procedure 1 and 15, this Court invited Advertisers to move to amend their complaint to conform with the EDVA Court's market definition. Advertisers timely did so.

Nonetheless Google devotes extensive argument to attempting to persuade the Court that Advertisers have unduly delayed in pursuing amendment. Under this Court's oversight, Advertisers have worked diligently to advance this litigation, including filing a pre-motion letter regarding collateral estoppel 15 days after the *EDVA Ruling* was issued. ECF 964. Google also ignores binding Second Circuit authority holding "mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (alteration in original).

Nor can Google establish, as is its burden, that amendment would be futile. *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018). The proposed worldwide geographic market for ad exchanges is plausible, as confirmed by the *EDVA Ruling*. *EDVA Ruling* at 847-849. Google's cited authority, which deals with how far concert-goers are willing to physically travel to attend live show is clearly distinguishable from the online markets at issue here. *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227-228 (2d Cir. 2006).

2

Google also argues that Advertisers cannot meet the good cause standard under Rule 16 for modifying a scheduling order, asserting that the Rule "sets limits on a Court's discretion to permit amendment" after the deadlines set by the Court. ECF 1157 ("Opp.") at 6. The Court's November 21, 2022 scheduling order initially set a deadline to file a "motion to amend." ECF 394 at 1. Google ignores that the Court amended that deadline in its August 14, 2025 Order. ECF 1106 at 2 ("any summary judgment movant who wishes to amend its pleadings to conform to the rulings in the E.D. Va. may file such a motion by August 28, 2025"). Rule 16, which governs requests to modify a schedule, is thus inapplicable. *See De La Rosa Martinez v. Harbor Express*, 2020 WL 7249499, at *6 (S.D.N.Y. Oc. 19, 2020) ("Where Rule 16's 'good cause' standard is inapplicable (or where the movant has met that standard), the Court should 'freely' grant leave to amend under Rule 15") (internal citations omitted). In any event, for the reasons set forth in their motion and this reply, Advertisers have demonstrated good cause.

B.    **Advertisers' Proposed Amendment Would Not Prejudice Google**

Having already litigated—and lost—on the question of whether Google has monopoly power in a worldwide ad exchange market for open-web display advertising (*see EDVA Ruling* at 852-56), Google faces no genuine prejudice from Advertisers' proposed amendment, which would add the same worldwide scope of the market to their complaint. Google merely seeks to insulate itself fully from the preclusive effect of the *EDVA Ruling*'s clear findings regarding Google's monopolistic conduct.

The very purpose of seeking collateral estoppel is to avoid having to relitigate the same issues. *See, e.g.*, *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018), citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) ("The doctrine of offensive collateral estoppel allows a plaintiff to preclude a defendant from relitigating an issue that has been previously decided against the same defendant."). The issue of whether Google has a monopoly

3

in the market for ad exchanges for open-web display advertising has been conclusively decided in the *EDVA Ruling*. Conducting additional discovery regarding a worldwide market in this context would defeat the purpose of invoking collateral estoppel: avoiding the relitigation of issues already decided. If estoppel applies as to monopoly power in a worldwide market, no further discovery on that adjudicated issue is needed. Google cannot plausibly claim prejudice in having to defend allegations of a worldwide market when it spent years in the EDVA case defending the exact same allegations, conducting extensive discovery regarding both a national and worldwide market, and developing expert opinions on whether Google has a monopoly in the national and worldwide ad exchange markets. There is no reason to reproduce those efforts here.

In deciding prejudice under Rule 15, courts in the Second Circuit consider whether amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

None of these factors is met here. Google asserts that it would need to reopen fact and expert discovery to address a worldwide market. But as stated in Advertisers' motion, the result of the proposed amendment would be to establish, *through collateral estoppel*, Google's monopoly power in a worldwide ad exchange market. Any prejudice described by Google is premised on the assumption that collateral estoppel would not apply, and further assume that the parties would still need to litigate the issues already decided in the *EDVA Ruling*. If the Court permits Advertisers to use collateral estoppel to establish the issues already decided in the *EDVA*

4

*Ruling*, no further discovery would be necessary. Declining to allow the amendment based on the possibility that the Court does not grant collateral estoppel would put the cart before the horse.

Google argues that "because Advertisers' experts have never expressed" opinions regarding the differences between a U.S. and worldwide market, "Google's experts have never had a chance to respond to or test them." Opp. at 13. The addition of a worldwide market to the currently pled nationwide market would not require additional expert discovery. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, if the Court finds that a worldwide market is appropriate, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ United States market would also be appropriate.

If the Court were persuaded by Google's arguments in this regard, the Court could reopen expert discovery for the brief, narrow, and limited purpose of permitting expert opinions on the differences between a U.S. and worldwide market. But even if such supplemental discovery were warranted, it would not constitute undue prejudice. Courts consistently hold that "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) (internal citations and quotations omitted); *United States For & on Behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989). It is not enough that some additional discovery may be required: "allegations that an amendment will require the expenditure of some additional time, effort, or money do not

5

constitute undue prejudice." *Scott*, 300 F.R.D., at 200 (quoting *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*, 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001)).

Here, any additional discovery would be limited to evaluating the difference between a worldwide and U.S. market. Courts within the Second Circuit have held that there is no prejudice from reopening discovery where the "discovery will be limited in scope, and likely involve the same witnesses as did the prior discovery." *Sullivan ex rel. Pointer, Cleaners & Caulkers Welfare Pension & Annuity Funds v. W. New York Residential, Inc.*, 2003 WL 21056888, at *2 (E.D.N.Y. Mar. 5, 2003); *see also Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) (no prejudice where additional discovery would not be extensive); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 100 (S.D.N.Y. 2010) (finding no prejudice where "additional discovery plaintiffs' proposed amendments will require is not as burdensome as defendants suggest," since they had already deposed the witness previously). At most, any additional discovery regarding a worldwide market would be limited and manageable and would not constitute the sort of undue prejudice that forecloses amendment. Courts also note that modest burdens can be addressed through schedule adjustments rather than denial of amendment. *Duling*, 265 F.R.D. at 101.

Nor do Google's authorities suggest that leave to amend should be denied here. *City of New York v. Grp. Health Inc.*, 649 F.3d 151 (2d Cir. 2011) did not involve an amendment to the geographic market. The court denied the proposed amendment as prejudicial because the plaintiffs were seeking to add two new market definitions and a new antitrust methodology, requiring discovery from other employers and insurers. *Id.* at 157. Similarly, plaintiffs in *McCarthy v. Dun & Bradstreet Corp.*, 372 F. Supp. 2d 694, 701 (D. Conn. 2005), *aff'd*, 482 F.3d 184 (2d Cir. 2007), also sought to add an "entirely new" claim that was not present in the

6

original complaint and which would have required additional merits discovery. In *Schnepf v. Jerome H. Siegel, M.D., P.C.*, 1998 WL 474132, at *4 (S.D.N.Y. July 11, 1998), the plaintiff attempted to add two new defendants after the close of discovery. *McCagg v. Marquis Jet Partners*, 2007 WL 2454192, at *6 (S.D.N.Y. Mar. 29, 2007), did not concern any proposed amendment but, rather, plaintiff there failed to allege a plausible product market.

Finally, *TQ Delta, LLC v. CommScope Holding Co., Inc.*, 657 F. Supp. 3d 892 (E.D. Tex. 2023) is wholly irrelevant here. In *TQ Delta*, the court found the defendant could not invoke claim and issue preclusion because, in the Fifth Circuit, they are affirmative defenses that are waived if not pled. *Id*. at 900. Moreover, the defendant failed to "address[] any of the factors" that might allow amendment under Rule 15 (*id.*) and had previously had taken the position that there was no overlap between its case and the case on which it later premised its collateral estoppel argument (*id.* at 901).

The issues that caused courts to deny leave to amend in the cases Google cites are not present here. Advertisers' claims have not changed, and the parties have not changed. The only change is the addition of a wider geographic market (alongside the existing U.S. geographic market), which would not require additional discovery for the reasons stated above. *See, e.g.*, *A.V.E.L.A., Inc. v. Est. of Monroe*, 34 F. Supp. 3d 311, 318 (S.D.N.Y. 2014) ("Although discovery has since closed, 'where the proposed amendment arises from the same set of operative facts as the original claims . . . the mere fact that discovery has concluded does not provide a reason for denying leave to amend.'") (quoting *Michalek v. Amplify Sports & Entertainment LLC*, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012)).

7

Finally, Google argues that the *EDVA Ruling* may be reversed, and the issues are not identical. For the reasons set forth in Advertisers' summary judgment reply, these arguments should not prevent the Court from utilizing collateral estoppel. (*See*, ECF 1091, III.A, C).

The central purpose of Advertisers' proposed amendment is to permit this Court to consider the preclusive effect of the EDVA Court's findings, to the extent the Court determines that the geographic markets must be identical to do so. Denying amendment would risk inconsistent judgments on the same exact conduct and waste judicial resources. Google's prejudice argument is, in substance, an attempt to avoid the collateral estoppel consequences of its prior loss. That is not the type of prejudice Rule 15 guards against.

## III. THE COURT SHOULD GRANT ADVERTISERS' MOTIONS FOR COLLATERAL ESTOPPEL AND PARTIAL SUMMARY JUDGMENT

### A. The Proposed Amendment Would Directly Address Issues in Dispute

In their motion to amend, Advertisers made a commonsense point: that pleading a worldwide market would moot Google's argument that this case was different from the *EDVA Ruling*. Google does not directly address this straightforward assertion, and instead makes unrelated arguments.

*First*, Google points to its arguments, *other* than those related to the geographic market, about why the Court should not grant collateral estoppel on market power and UPR. Opp. at 17-18. Aside from being baseless (*see* ECF 1091), Advertisers never asserted that the amendment would moot *all* of Google's arguments. These other arguments have nothing to do with Advertisers' contention that the amendment would moot Google's geographic-based argument.

*Second*, Google incorrectly says that the *EDVA Ruling* rejected a U.S. submarket. But the *EDVA Ruling* did not even consider whether there could be a valid submarket (the DOJ alleged

8

that worldwide and U.S. were both valid geographic markets). Instead, it rejected Google's argument that the market must be limited solely to the United States. *EDVA Ruling* at 848-849.

*Third*, Google finds it "hard to understand" how collateral estoppel on a worldwide market could streamline the litigation when Advertisers' experts analyzed injury and damages for a U.S. market. Opp. at 18. That is simple: there is no rule prohibiting an expert from analyzing anticompetitive effects in an isolated portion of the geographic market. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And a factual finding that there is a worldwide market would be relevant—if not dispositive—evidence that there is a valid U.S. submarket.

**B.     Regardless of Whether the Court Grants the Proposed Amendment, the Court Should Grant Advertisers' Summary Judgment Motion**

In their motion to amend, Advertisers sought to make clear that whether the Court permits the proposed amendment would not be determinative of whether it could also grant Advertisers' summary judgment motion. In other words, the Court could deny the motion to amend and still grant the motion for summary judgment in full. Advertisers' motion for leave explained why this is the case. Google disagrees and reiterates the arguments from its summary judgment opposition. Given that the parties have already extensively briefed these issues, Advertisers only briefly address them here.

*First*, Google refers to "fundamental differences" in the *product* markets but does not actually identify them. Opp. at 19.

*Second*, Google claims that Advertisers' claims are dependent on the product market being one-sided. *Id.* But the *product* market is ad exchanges; whether that is conceived of as one-sided or two-sided is irrelevant. In either case the product is ad exchanges. And in any event, ▮

9

██████████████████████████████████████████

██████████████████████████████████████████

███ and the *EDVA Ruling* did not actually hold that the ad exchange market was two-sided.

*Third*, the cases Google cites for its argument that direct evidence of monopoly power is irrelevant unless the markets are identical (Opp. at 20) are inapposite. Advertisers are not suggesting that defining a relevant market is unnecessary. Instead, they are asserting that direct evidence shows that Google had monopoly power regardless of how the market is defined. Google provides no response to this argument.

*Fourth*, Google does not identify any manner in which the geographic market was relevant to the *EDVA Ruling's* rejection of Google's procompetitive justification; it cites to general language from the *EDVA Ruling's* discussion of the legal standard for defining a relevant market. Opp. at 20-21.

*Fifth*, Google confirmed that the geographic market is irrelevant to the *EDVA Ruling's* rejection of its duty to deal defense. Opp. at 21.

*Lastly*, Google generally requests that the Court withhold on exercising its discretion to grant Advertisers' motion for summary judgment. Opp. at 21-22. This argument has nothing to do with the motion to amend and was fully addressed in Advertisers' summary judgment motion. Google also wrongly suggests that Advertisers' claims have "morphed." *Id*. at 22. The proposed amendment does not change the nature of Advertisers' claims, it only adds a broader geographic market (without eliminating the existing U.S. market).

## IV. CONCLUSION

For the foregoing reasons, Advertisers respectfully request that the Court grant Advertisers leave to amend their complaint.

Dated: September 15, 2025                               Respectfully submitted,

/s/ *Dena C. Sharp*
Dena C. Sharp (*pro hac vice*)
Scott Grzenczyk (*pro hac vice*)
Mikaela Bock (*pro hac vice*)
Isabela Velez (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
scottg@girardsharp.com
mbock@girardsharp.com
ivelez@girardsharp.com

/s/ *Tina Wolfson*
Tina Wolfson (TW-1016)
Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, California 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs and the Proposed Advertiser Class*