# FRESHFIELDS

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Silicon Valley**
855 Main Street
Redwood City, CA 94063
T +1 650 618 9250 (Switchboard)
  +1 650 461 8276 (Direct)
E justina.sessions@freshfields.com
www.freshfields.com

May 2, 2025

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC); *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-cv-7001 (PKC)

Dear Judge Castel:

Pursuant to Your Honor's March 14, 2025 Order, ECF No. 926, Defendants Google LLC and Alphabet Inc. (together, "Google") respectfully submit this pre-motion letter to request permission to move for summary judgment on all of Advertiser Plaintiff Hanson's remaining claims in the Consolidated Advertiser Class Action Complaint (ECF No. 399). Google further requests that the Court establish an appropriate schedule and page limits for summary judgment briefing. In accordance with Your Honor's Individual Practices, we note there is no conference currently scheduled before the Court.

Summary judgment in this case is not foreclosed by the recent decision in the related Virginia case against Google. *See United States v. Google LLC*, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025). *First*, there is not yet a final judgment in the Virginia case, and it would be unfair to give the decision preclusive effect. *Second*, in certain places, the Virginia court's decision applied Fourth Circuit law, which differs from the law of the Second Circuit. *Third*, the decision contains multiple errors of law and unsupported factual findings, and Google plans to appeal it. *Fourth*, Hanson advances several theories in this case that either were not part of the Virginia case or that were resolved in Google's favor. *Fifth*, Hanson must prove more to prevail in this case than was required of the government. *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) ("It is a well-established principle that, while the United States is authorized to sue anyone violating the federal antitrust laws, a private plaintiff must demonstrate 'standing.'"). In short, the Virginia court's decision does not preclude granting summary judgment in this case on the grounds discussed below.

## I. Procedural History and Hanson's Remaining Claims.

On March 1, 2024, the Court granted in part and denied in part Google's motion to dismiss the advertisers' claims. The Court dismissed: (1) claims directed toward Google's alleged anticompetitive conduct in the market for ad buying tools used by large advertisers; (2) the Section 1 claim based on the implementation of Unified Pricing Rules ("UPR") and line item caps; and (3) the Section 1 claim related to an agreement between Google and Meta ("NBA"). ECF No. 701 at 3. The Court also dismissed plaintiff Christopher Hanson's claims based on conduct that post-dated September 6, 2016 (including line item caps, redacted auction data, and UPR) and held that Hanson cannot seek injunctive relief. *Id*. at 22. Plaintiffs Raintree, Rodrock, Kinin, and Singh subsequently dismissed their claims. ECF Nos. 512, 882, 844. The parties stipulated to dismissal of Advertisers' California-law claims based on the NBA, ECF No. 771, and their California-law claims based on UPR and line-item limits, ECF No. 775. On January 24, 2025, the Court entered an order compelling arbitration and staying the claims of advertiser plaintiffs Cliffy Care Landscaping LLC and Michael Stellman. ECF No. 903. Thus, Hanson is the only remaining advertiser plaintiff.

Hanson's live claims are:

- Dynamic Allocation, Enhanced Dynamic Allocation, Dynamic Revenue Share as applied to Google's ad exchange fee (*i.e.*, sell-side DRS), Projects Poirot and Elmo, and redacted auction data, constituted monopolization or attempted monopolization of a market for ad exchanges. Advertiser Third Amended Compl. ¶¶ 207, 213, 353, 361;

- Project Bernanke constituted monopolization or attempted monopolization of a market for ad exchanges and a market for small-advertiser buying tools. *Id*. ¶¶ 223, 353, 361; and

- Google's conduct violated California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200. *Id*. ¶¶ 395-405.

## II. Summary Judgment Should be Granted on All of Hanson's Federal Antitrust Claims.

To demonstrate monopolization under the Sherman Act, a plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (internal citations omitted). To succeed on such a claim, a plaintiff must offer evidence that a defendant has "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power." *Id*. at 108. Anticompetitive conduct is "conduct without a legitimate business purpose that makes sense only because it eliminates competition." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (quotation marks omitted).

To prove attempted monopolization, a plaintiff must show, "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). An attempted-monopolization claim also "requir[es] some measure of market power." *Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 791 (2d Cir. 1987).

For all claims, Hanson must also prove antitrust injury. *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 n.3 (2d Cir. 2006) (antitrust injury must "flow[] from that which makes defendants' acts unlawful") (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)); *see also* Areeda, Hovenkamp & Blair, *Antitrust Law* § 335c4 (2000) (antitrust plaintiff "must show not only injury-in-fact, but also that [the injury] constitutes . . . the kind that the antitrust laws are designed to prevent and that [is] congruent with the rationale for finding an antitrust violation in the first place").

### A. Hanson Cannot Prove Multiple Elements of Claims His Experts Did Not Address: DA/EDA, DRS, Poirot/Elmo, and Redacted Auction Data.

Hanson disclosed no expert opinions whatsoever regarding DA, EDA, sell-side Dynamic Revenue Share, Project Poirot, Project Elmo, or redacted auction data. Hanson appears to have abandoned these claims and cannot possibly show that any of this conduct was anticompetitive or exclusionary, that it had the requisite anticompetitive effects in a relevant market, or that he suffered any antitrust injury as a result of this conduct. The putative class cannot show injury from this conduct, as Hanson's experts' impact and damages models do not include this conduct at all.

Google also anticipates moving to exclude the opinions of one or more of Hanson's experts. If the Court grants Google's motions with respect to any expert opinions that are necessary to Hanson's claims, then summary judgment would be appropriate on those claims.

### B. Hanson Cannot Prove that Google Has Monopoly Power (or a Dangerous Probability of Achieving it) In Ad Exchanges or Small Advertiser Buying Tools.

All of Hanson's remaining claims fail because Hanson cannot show that Google has the requisite monopoly power in either ad exchanges or small-advertiser buying tools. With respect to ad exchanges, Hanson's experts describe so-called direct evidence that (i) does not relate to ad exchanges at all; (ii) is not actually evidence but instead unsupported expert proclamations; or (iii) is not evidence of market power. Hanson's expert also offers a 60% market-share figure but never explains how that share was calculated.[1] This single unsupported figure from an expert does not create a genuine issue of material fact. With respect to small-advertiser buying tools, Hanson does not offer *any* indirect or direct evidence of market power.

---

[1] This unsupported and unexplained 60% figure is significantly higher than the exchange market shares calculated by other plaintiffs' experts, including those offered by the U.S. Department of Justice.

### C. Summary Judgment Should be Granted on Hanson's Bernanke Claims.

Global Bernanke is the only conduct (i) that Hanson's experts address and (ii) to which Hanson was even potentially subject. The Bernanke claims fail for lack of proof of monopoly power, as discussed above.

Hanson's Bernanke claims also fail because he cannot establish that Bernanke lacked any valid business purpose. It is undisputed that Bernanke was *good* for Google's customers like Hanson because it increased Google Ads advertisers' conversion volume and the number of auctions that Google Ads advertisers won. For the same reason, Hanson also cannot show antitrust injury from any version of Bernanke. *See Lavoho, LLC v. Apple, Inc.*, 232 F. Supp. 3d 513, 525 (granting summary judgment in part because "a plaintiff cannot establish antitrust injury where 'it actually tended to benefit' from the alleged conduct") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Hanson was not injured by Bernanke because it made him better off.

### D. Summary Judgment Should be Granted on Hanson's Poirot and Elmo Claims.

It is undisputed that Projects Poirot and Elmo were launched in 2017, after Hanson stopped using Google Ads to buy display advertising. The Court has already held that Hanson cannot pursue claims for conduct post-dating his use of Google Ads. *See* ECF No. 701 at 22. Hanson therefore cannot show that he suffered anticompetitive injury (or any injury at all) from Poirot or Elmo.

### E. Summary Judgment Should be Granted Regarding Buy-Side DRS, Which Is Not in the Complaint.

Hanson never made a claim regarding buy-side DRS, which involved the margin that it took on Google Ads transactions (as opposed to sell-side DRS, which involved Google's AdX fees). Buy-side DRS is not mentioned in the Third Amended Complaint. Yet Hanson's expert discusses buy-side DRS and offers conclusions about it. It would prejudice Google to allow Advertisers to pursue theories that they did not assert until after the close of fact discovery. *See City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (affirming summary judgment and denial of leave to amend complaint when allowing amendment would "require additional discovery" that would "delay proceedings and require substantial additional expense").

The buy-side DRS claim fails on the merits as well, as Hanson cannot show that buy-side DRS lacked any valid business purpose or that it caused him anticompetitive injury. According to his own expert, "BS-DRS achieved greater volume and revenue for both Google Ads and AdX." Zona Rpt. ¶ 71. As a Google Ads customer, buy-side DRS benefited Hanson. He therefore cannot show antitrust injury as a result of buy-side DRS.

### F. Summary Judgment Should be Granted Regarding AdSense Transactions, Which Are Not in the Complaint.

Hanson and the putative class appear to intend to claim damages (and impact) for their purchases of advertising through Google AdSense, even though it is undisputed that those transactions did not involve ad exchanges. AdSense is never mentioned in the complaint and, until he served an expert report, Hanson gave no indication that he considered AdSense transactions to be at issue in this case. Nonetheless, Hanson's expert purports to measure impact and calculate damages for purchases from two different "inventory sources:" ad exchanges (AdX and third-party exchanges) and AdSense. In his opening report, Hanson's expert proffered two regression models and he separately reported a purported relationship between AdX's share in an exchange market and (i) the price of ads transacted through ad exchanges; and (ii) the price of ads transacted on AdSense. In his reply report (but not in response to a criticism from Google's experts), Hanson's expert combined exchange and AdSense data to estimate one single relationship between AdX's share of an exchange market and the price of *any* display ads purchased through Google Ads. It is undisputed that AdSense transactions did not involve any ad exchanges.

The Court should grant summary judgment to Google on Hanson's claims relating to his AdSense purchases for three reasons. *First*, his AdSense claims fail for lack of proof of causation. "[L]ack of causation in fact is fatal to the merits of any antitrust claim." *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 41 (2d Cir. 1986). Hanson cannot prove—and has no comprehensible theory regarding—how any of the challenged conduct had any anticompetitive effect on AdSense transactions. It is undisputed that none of the challenged conduct directly affected or impacted the value of bids going to AdSense or the price of AdSense impressions. Without any link between the conduct and AdSense, his claims fail.

*Second*, Hanson cannot show antitrust injury for his AdSense transactions. "Generally, only those that are participants in the defendants' market can be said to have suffered antitrust injury." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016). Hanson alleges that the monopolized market is ad exchanges.[2] It is undisputed that he is not a customer or competitor in a market for ad exchanges. Nor can he avail himself of the "inextricably intertwined" exception to the market-participant rule. AdSense transactions do not have anything to do with ad exchanges and are certainly not inextricably intertwined with exchanges.

*Third,* in addition to lacking antitrust injury, Hanson is also not an efficient enforcer of claims relating to AdSense. The first efficient-enforcer factor is "the directness or indirectness of the asserted injury." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013). Hanson's injury with respect to AdSense transactions is completely remote. He posits that an increase in Google's share of an ad exchange market *somehow* led to higher prices for ads purchased through AdSense (and not through an exchange). But the mechanics of that theory are

---

[2] Hanson also claims that Bernanke affected the small-advertiser buying tools market. The Bernanke claim fails for the reasons discussed above. Moreover, Hanson offers no theory whatsoever as to how Bernanke affected the prices of ads purchased from AdSense. It is undisputed that Bernanke affected Google Ads' bids into AdX, but did not apply at all to AdSense.

not at all explained; and even if they were, that chain of causation would necessarily require multiple steps. For the same reason, the third efficient-enforcer factor, "the speculativeness of the alleged injury," *id.*, also shows that Hanson lacks antitrust standing.

### G. Hanson Was an Indirect Purchaser with Respect to Ad Exchanges, and therefore Cannot Claim Damages.

Hanson's federal antitrust claims relating to the ad exchange market (all of which are for damages) are barred because the record makes clear that Hanson was an indirect purchaser of ad exchange services. "[I]ndirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue" for damages under the federal antitrust laws. *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). It is undisputed that Hanson did not purchase ad exchange services directly from Google, nor did he directly pay any portion of the fees that Google charged for ad exchange services. Instead, advertisers' experts' theories of impact with respect to ad exchanges involve publishers passing on to advertisers part of the price of ad exchange services that the publishers paid. Singer Rpt. ¶¶ 97-104; Zona Rpt. ¶¶ 120, 126. This makes Hanson an indirect purchaser and unable to claim damages for alleged overcharges in the ad exchange market.

For similar reasons, Hanson is not an efficient enforcer of claims relating to ad exchanges.[3] The first efficient-enforcer factor, the directness of the injury, weighs against Hanson because his theory of ad exchange impact is necessarily indirect: Google allegedly excluded other ad exchanges, which led to some effects in the ad exchange market, which then somehow translated into Hanson paying more to place advertisements. The second factor, "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement," *Gatt Commc'ns*, 711 F.3d at 78, also weighs against Hanson. The Publisher class is pursuing parallel claims regarding ad exchanges and directly paid ad exchange fees. As for the third factor, the "speculativeness of the alleged injury," *id.*, Hanson's theory is either that reduced competition in ad exchanges inexplicably leads to higher ad prices or it is that publishers passed on part of the ad exchange fees. The fourth factor, the difficulty of apportioning damages, also weighs against Hanson. Awarding ad exchange damages to the advertisers would require allocating those damages between publishers and advertisers. For these reasons, Hanson is an indirect purchaser and not an efficient enforcer of ad exchange claims.

---

[3] The Court denied Google's motion to dismiss on efficient enforcer grounds, but this does not preclude summary judgment now that advertisers must offer evidence to support their allegations. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 482-83 (S.D.N.Y. 2021), *aff'd*, 2023 WL 7180648 (2d Cir. Nov. 1, 2023) (granting summary judgment on efficient enforcer grounds following denial of motion to dismiss); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 287-88 (S.D.N.Y. 2015), *aff'd in part*, 938 F.3d 43 (2d Cir. 2019) (granting partial summary judgment on efficient enforcer grounds).

### III. Summary Judgment Should be Granted on Hanson's California Unfair Competition Law Claim.

Hanson cannot prevail on his California Unfair Competition Law ("UCL") claim because he cannot obtain any remedy under that law. The UCL provides for injunctive relief or restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (Cal. 2003). The Court has already ruled that Hanson lacks standing to seek injunctive relief. *See* ECF No. 701 at 22. This ruling applies equally to the state-law claims. Hanson cannot obtain injunctive relief because (i) he lacks standing to seek it as he stopped using Google Ads in 2016, and (ii) he has an adequate remedy at law (*i.e.*, the damages he seeks for the same conduct). *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311-13 (9th Cir. 2022) (barring equitable UCL claim in federal court where plaintiff had adequate legal remedy for alleged injury under an alternative claim). And as for restitution, Hanson has provided no calculation of the restitution that would be owed to him, nor even offered a theory as to how it might be determined. He cannot show "the difference between the price [he] paid and the actual value [he] received" from Google's ad tech products. *See In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 889 (Ct. App. 2015).

Hanson also cannot prove his UCL claim because none of the conduct that he has standing to challenge (*i.e.*, Global Bernanke) is unlawful, unfair, or fraudulent. The challenged conduct does not violate the antitrust laws, for the reasons provided above, nor does it "threaten an incipient violation" or violate the spirit of the antitrust laws. It is therefore not unlawful or unfair. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2019 WL 633008, at *5 (N.D. Cal. Feb. 14, 2019) (dismissing UCL "unfairness" companion to federal antitrust claim where the plaintiff failed to allege market power, substantial anticompetitive effects, or impact). Hanson also cannot prove a claim under the "fraudulent" prong of the UCL. He has not identified any supposedly untrue or misleading statement. Moreover, a UCL "fraud" plaintiff must "demonstrate actual reliance on the allegedly deceptive or misleading statements." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326 (Cal. 2011) (citation omitted). Hanson testified that he never read, heard, or relied on a single Google statement when buying display ads. For similar reasons, he cannot demonstrate that he suffered any economic injury as a result of any false or misleading statement by Google.

### IV. Neither Hanson nor the Putative Advertiser Class Can Pursue Claims Dismissed From Hanson's Complaint.

The putative class cannot pursue UPR claims. The advertiser plaintiffs disclosed impact and damages models (and accompanying expert opinions) that purported to incorporate the effects of UPR. UPR was implemented almost three years after Hanson stopped using Google Ads. Hanson's UPR claim was dismissed at the pleadings stage. *See* ECF No. 701 at 22.

The putative class has no claim regarding UPR because no representative plaintiff has such a claim. *See Porter v. Texaco Inc.*, 985 F. Supp. 380, 381 n.1 (S.D.N.Y. 1997) ("Because plaintiff's individual claims are dismissed, the class claims necessarily fail as well."). As Google has not yet seen the motion for class certification, Google would like to reserve the right to move for summary judgment on any UPR claim to the extent Hanson or plaintiffs' counsel believes

they can still pursue it.  To be clear: Hanson cannot prove a claim based on UPR because he is unable to show that UPR is anticompetitive conduct, and he is unable to show antitrust injury.  To the extent Hanson attempts to pursue these claims on the class's behalf, summary judgment should be granted.

**V.     Proposed Procedures for Briefing.**

Rather than establish a briefing schedule now, Google respectfully requests that the Court defer setting deadlines for summary judgment briefing in the Advertiser case while the motion for class certification is pending.[4]  Resolution of the class certification motion could affect the grounds on which Google moves for summary judgment and perhaps even obviate the need for motion practice altogether.

If the Court would prefer for the parties to brief summary judgment in the near term, Google respectfully requests that its motion and opening brief be due on September 5, 2025, Advertisers' opposition brief be due on October 20, 2025 (45 days later), and Google's reply be due on November 19, 2025 (30 days later).[5]  Plaintiffs previously stated that they anticipated proposing a July 1 deadline for opening briefs, "with oppositions and replies due 45 and then 30 days thereafter."  ECF No. 941, at 3.[6]  Because class certification briefing (and briefing on related motions *in limine*) will not conclude before July 16 (and could extend until July 30), ECF Nos. 942, 944, Plaintiffs' proposal would require Google to submit four different summary judgment motions (as well as briefing on motions *in limine* related to summary judgment) in the midst of the same period when it will also be briefing class certification (and motions *in limine* related to class certification).  By contrast, Google's proposal would require filing of summary judgment motions on September 5, about one month after briefing related to class certification concludes on July 30.  In light of the number of motions likely to be filed, the complexity of the issues involved, and their importance to the resolution of the cases in the MDL, a September 5 deadline for summary judgment motions and opening briefs would be more appropriate than a July 1 deadline and would still keep this case moving forward efficiently.

*   *   *

For all of these reasons, Google respectfully requests that the Court (a) allow it to move for summary judgment on all remaining claims in Hanson's complaint; (b) defer entering a

---

[4] In a separate pre-motion letter, Google is requesting that the Court also defer summary judgment briefing in the Publisher case.  Google is not requesting deferred summary judgment briefing in any other cases in the MDL.

[5] In addition, Google respectfully requests that the Court (a) establish the same briefing schedule for motions *in limine* regarding expert testimony relied upon by a party to support or oppose summary judgment; (b) require each side to include in a single brief all arguments regarding all expert testimony relevant to summary judgment; (c) allow up to 20 pages per expert for each side's opening and opposition briefs and up to 10 pages per expert for reply briefs; and (d) dispense with the requirement that any party file a pre-motion letter concerning any such motions.  *Cf.* ECF No. 944 (addressing motions *in limine* regarding expert testimony relied upon by a party to support or oppose class certification).

[6] On April 9, as part of the parties' discussions concerning briefing of summary judgment and other issues, Google proposed that summary judgment motions be due on August 1.  *See* ECF No. 943-3, at 14-15.  On April 29, the Court set a briefing schedule for certain motions *in limine* related to class certification that extended as far as July 30.  ECF No. 944.  Now that the schedule for briefing related to class certification extends to the end of July, Google submits that September 5 would be a more appropriate deadline for summary judgment motions.

summary judgment briefing schedule in the Advertiser case (or, alternatively, set a September 5 deadline for summary judgment motions and opening briefs); and (c) allow the parties up to 25 pages for opening and opposition briefs concerning summary judgment and up to 15 pages for reply briefs.

Sincerely,
*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com

*Counsel for Defendants Google LLC and Alphabet Inc.*

CC: All Counsel of Record (via ECF)